IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RIVEREDGE DENTISTRY LTD P'SHIP | ) | |
| 3865 Rocky River Dr. Units 1, 2, 6 | ) | |
| Cleveland, Ohio 44111 | ) | CASE NO. 1:22-cv-1007TMP |
| | ) | |
| -and- | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| THE WEST VALLEY CONDOMINIUM | ) | |
| ASSOCIATION | ) | |
| 3865 Rocky River Dr. | ) | |
| Cleveland, Ohio 44111 | ) | |
| | ) | |
| -and- | ) | AMENDED COMPLAINT FOR |
| | ) | MANDAMUS, INJUNCTIVE RELIEF |
| DARSHANA A. SHAH, TRUSTEE | ) | AND DAMAGES |
| Darshana A. Shah Trust U/A 11/25/1991 | ) | |
| As Restated | ) | |
| 3865 Rocky River Drive, Unit 4 | ) | |
| Cleveland, Ohio 44111 | ) | Jury Demand Endorsed Hereon |
| | ) | |
| -and- | ) | |
| | ) | |
| DR. BENEDICT H. KIM | ) | |
| 3865 Rocky River Drive, Unit 3 | ) | |
| Cleveland, Ohio 44111 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| KAMM PROPERTY LLC | ) | |
| 3865 Rocky River Drive, Unit 5 | ) | |
| Cleveland, Ohio 44111 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| RIVEREDGE DENTISTRY INC. | ) | |
| 3865 Rocky River Drive, Unit 6 | ) | |
| Cleveland, Ohio 44111 | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| -vs.- | ) | |
| | ) | |
| CITY OF CLEVELAND | ) | |

601 Lakeside Aven )
Cleveland, Ohio 44114 )
)
-and- )
)
NORTHEAST OHIO REGIONAL )
SEWER DISTRICT )
5550 Euclid Avenue )
Cleveland, Ohio 44115 )
)
                       Defendants. )

## PRELIMINARY STATEMENT

This case commenced on May 28, 2020 in the Cuyahoga County Court of Common Pleas as a state tort negligence and trespass action seeking damages and injunctive relief for flooding damage caused to Plaintiff Riveredge Dentistry P'Ship's (herein "Riveredge") basement condominium units 1 and 2 located in the medical office Building located at 3865 Rocky River Dr., Cleveland.  The water damage was caused by the Defendants discharge of storm waters into "bio-retention" basins (herein the "Basins") constructed in June 2019 by the City of Cleveland (herein "Cleveland") in its off street municipal parking lot in the Kamm's Corners neighborhood of Cleveland (herein the "KMPL"). The Northeast Ohio Regional Sewer District ("NEORSD") reviewed, approved and financed the KMPL improvements as part of its Green Infrastructure Grant Program ("GIG"), which was created expressly to divert storm waters away from NEORSD storm water sewerage facilities. Cleveland answered the Complaint on August 27, 2020.

On September 7, 2020 Riveredge filed an amended complaint as a matter of right to add NEORSD as a Defendant. Cleveland answered on October 2, 2020.  NEORSD moved to dismiss pursuant to O. R. Civ. P. 12(b)(6), alleging that it was entitled to immunity pursuant to Ohio's Political Subdivision Tort Liability Act. O.R.C. Ch. 2744.

Riveredge filed a Second Amended complaint as a matter of right to clarify its tort claims against NEORSD.  On January 11, 2021 the trial court dismissed NEORSD holding that

NEORSD's "only involvement was to provide funding for the retention basin project." Riveredge appealed on February 6, 2021.   On October 28, 2021, Ohio's 8th District Court of Appeals affirmed NEORSD's dismissal, holding that Riveredge's state tort claims were barred by the immunities set forth in O.R.C. Chapter 2744 (copy attached).

During the pendency of the appeal storm water continued to flood Plaintiffs Property and Building.  Cracks in the floors of the basement and along the eastern wall of the Building were discovered in 2021. Upon inspection by professional engineers, Riveredge was advised that the eastern basement wall and floors were damaged and compromised by the cumulative and continuing discharge of KMPL storm waters through the Basins into, under, against the Building. Riveredge's Third Amended Complaint asserting takings claims against Cleveland and NEORSD under the Ohio and U.S. Constitutions was authorized by the Court on May 10, 2022.  The Court joined West Valley Condominium Association, the Shah Trust, Dr. Benedict Kim, Kamm Realty and Riveredge Dentistry Inc. as party plaintiffs the same day.

Cleveland removed the action to this Court on June 10, 2022 pursuant to 28 U.S.C. §1446(d).  This complaint was authorized by the Court on July 20, 2022.

## JURISDICTION AND VENUE

1.      Federal jurisdiction is found in 28 U.S.C. §1331, 1343 and arises from Defendants repeated discharge of KMPL storm waters onto Plaintiffs Property in violation of the Fifth and Fourteenth amendments to the U.S. Constitution. Pendent or ancillary jurisdiction over Plaintiffs state constitutional and tort law claims is authorized by 28 U.S.C. §1367.

2.      Defendants continuing joint and several conduct damaging Plaintiffs Property and Building results from their the intentional diversion / discharge of KMPL storm waters away from the KMPL and Defendants respective sewerage systems and onto Plaintiffs Property in violation the

Fifth and Fourteen Amendments to the U.S. Constitution, 42 U.S.C. §§1983, 42 U.S.C. §1988, Art. 1 §19 of the Ohio Constitution and state tort law.

3.      28 U.S.C. §§ 1343(3) and (4) provide original jurisdiction in this Court in any civil action authorized by law to redress the deprivation, under color of any law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States, or any Act of Congress, providing for the civil, or equal rights, of citizens within the jurisdiction of the United States.

4.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b).  All parties are within the jurisdiction of this Court. All conduct and acts relating hereto occurred within the jurisdiction of the Court.

**PARTIES**

5.      Riveredge Dentistry Ltd. Partnership is an Ohio partnership that owns three condominium units 1, 2 (basement) and 6 (second floor) in the medical office Building controlled and managed by the West Valley Condominium Association located at 3865 Rocky River Dr., Cleveland, Ohio. Dr. William E. Waters is a partner.  Riveredge Dentistry Ltd. Partnership is a member of the West Valley Condominium Association;

6.      West Valley Condominium Association is a duly organized condominium association under Ohio law and owns, controls and manages the real Property, Building and improvements thereon (herein "the Building or Building") located at 3865 Rocky River Dr., Cleveland, Ohio (PPN: 025-25-004) (herein the "Property").   Dr. William E. Waters is the Manager of the Association;

7.      The Darshana A. Shah Trust is a duly organized trust under Ohio law that owns condominium unit(s) (Unit 3, first floor) in the Property owned, managed and/or controlled by the

West Valley Condominium Association located at 3865 Rocky River Dr., Cleveland, Ohio. The Shah Trust is a member of the West Valley Condominium Association;

8.     Dr. Benedict Kim is an individual who owns condominium unit(s) (Unit 4, first floor) in the Property owned, managed and/or controlled by the West Valley Condominium Association located at 3865 Rocky River Dr., Cleveland, Ohio 44111.  Dr. Kim is a member of the West Valley Condominium Association;

9.     Kamm Property Inc. is an Ohio corporation that owns condominium unit(s) (Unit 5, second floor) in the Property owned, managed and/or controlled by the West Valley Condominium Association located at 3865 Rocky River Dr., Cleveland, Ohio 4411.  It is a member of the West Valley Condominium Association;

10.    Riveredge Dentistry Inc. is a tenant of Plaintiff Riveredge P'ship, occupying Unit 6 (second floor).  Dr. William E. Waters is an officer of Riveredge Dentistry Inc. Riveredge Dentistry Inc. has performed services arising out of the repeated flooding of the Property and Building at the request and direction of the West Valley Condominium Association;

11.    Plaintiffs are, and at all times relevant hereto have been, citizens of the United States who conduct business in Cuyahoga County, State of Ohio;

12.    All Plaintiffs have an ownership interest in the common areas, systems and structures of the Property;

13.    All Plaintiffs have a duty and obligation to maintain and repair the Property and Building;

14.     The City of Cleveland is a chartered municipal political subdivision of the State of Ohio;

15.    Cleveland acquired title to PPN 252-25-031 on July 13, 1996;

16.    Cleveland has operated PPN 252-25-031 as an off street municipal parking facility (herein the "KMPL") since 1996; Ex. 1;

17.     The KMPL Property abuts and adjoins the Plaintiffs Property along its western Property line; Id.;

18.     The CITY OF CLEVELAND, OHIO is, and all times relevant hereto has been, a governmental entity incorporated under the laws of the State of Ohio, is the owner of the KMPL, and is responsible for the violation of Plaintiffs rights secured by the Fifth and Fourteenth Amendments of the U.S. Constitution, by Article 1, §19 of the Ohio Constitution and by Ohio tort law, and is liable for damages arising out of its intentional facilitation, authorization and discharge of KMPL storm waters onto and into Plaintiffs Property to facilitate the operation of its off street parking facility.

19.     NEORSD is a regional political subdivision of the State of Ohio charged with the ownership, management and control of storms waters in Cleveland and throughout north east Ohio. See *Northeast Ohio Reg. Sewer Dist. v. Bath Twp.,* 144 O.St.3d 387 (2015)

20.     NEORSD is responsible for the violation of Plaintiffs rights secured by the Fifth and Fourteenth Amendment of the U.S. Constitution and by Article 1 §19 of the Ohio Constitution arising out of its intentional facilitation, authorization and diversion of KMPL storm waters away from its storm sewer system onto Plaintiffs Property and Building, and is liable for damages arising out of its intentional facilitation, authorization and discharge of KMPL storm waters onto and into Plaintiffs Property.

**FACTS**

21.     The KMPL (PPN 025-25-031) is bounded by West 168th Street on the east, Albers Avenue on the south, and PPN 025-25-036, 025-25-048, 025-25-049, 025-25-050 and 025-25-051 on the north; Ex. 1.

22.     The KMPL shares it western boundary with PPN 025-25-005 and 025-25-004; Id.

23.     Plaintiffs own and occupy PPN 025-25-004;

24.     PPN 025-25-04 is improved with a two story medical office Building with condominium units on the basement, first and second floors;

25.     Prior to 2019 Plaintiffs Building experienced storm water flooding twice in thirty (30) years;

26.     Cleveland has operated the KMPL as an off street municipal parking facility since 1996;

27.     The operation of an off street parking facility is a proprietary function as defined by Ohio Revised Code Chapter 2744;

28.     The KMPL and Plaintiffs Property share a common Property boundary along the western edge of PPN 025-25-031; Ex. 1;

29.     Cleveland owns and operates a storm sewer (Albers sewer) that traverses West 168th street, proceeding along Albers Avenue in a westerly direction, then in a north – northwesterly direction along the western Property line of PPN 025-25-031; Ex. 3;

30.     The Albers sewer traverses the north east corner of Plaintiffs Property and empties in the NEORSD's combined sewer system in Rocky River Drive;  Id.;

31.     Prior to June 2019, an 8-10 inch curb, located along the western KMPL property line, separated the KMPL from Plaintiff's Property; Ex. 4;

32.     The KMPL slopes from West 168th Street westerly towards Rocky River Drive.

33.     KMPL surface storm water drains / flows from east to west/northwest towards Plaintiffs Property;

34.     Plaintiffs Property is downstream of the KMPL;

35.     Prior to June 2019 KMPL storm water drained into NEORSD's combined sewer system;

36.     Prior to June 2019 KMPL storm water drained into the Albers sewer; Ex. 4;

37.     NEORSD charges Plaintiffs storm water discharge fees;

38.     NEORSD charges Cleveland storm water discharge fees;

39.     Prior to June 2019, KMPL storm water was diverted, away from Plaintiffs' Property to the north / northwest by the curb located along the western KMPL Property line; Exs. 4, 5, Affidavit of Steve Lorenz, Executive Director, Kamms Corners Development Corporation.

40.     Prior to June 2019, KMPL storm waters regularly flooded properties west /northwest of the parking facility and north of Plaintiffs Property;  Id. at ¶14;  Exs. 5, 6;

41.     Prior to June 2019 the KMPL was in a poor and/or unsafe condition.  Id.

42.     In late December 2015 the Kamms Corner Development Corporation (KCDC) submitted a Green Infrastructure Grant (GIG) Application to NEORSD to secure funds to repair, restore and rebuild the KMPL, which was in poor repair as a result of deterioration, neglect and/or negative investment by the City of Cleveland. Ex. 5.

43.     The GIG application was also submitted to address and/or remedy flooding caused by the discharge of KMPL storm waters onto private Property adjacent the KMPL;  Id.

44.     The GIG application sought NEORSD funding for the construction of bio-retention basins in the KMPL to collect and discharge KMPL storm waters; Id.

45.     The GIG application was submitted as a KMPL parking lot improvement project with bio retention infrastructure; Id.;

46.     NEORSD formally approved the KCDC GIG application on January 5, 2017; Exs. 5, 8-10;

47.     NEORSD subsequently notified the KCDC that it could not finalize the GIG grant because the development corporation's lack of ownership or control of the KMPL; Exs. 5, 10.;

48.     KCDC assigned its GIG application to the City of Cleveland in 2018; Id.

49.     NEORSD Board Resolution No. 345-18 expressly states that the "Kamms Corners Public Parking Retrofit Project" serves the public purpose of reducing KMPL storm water flows into NEORSD's combined sewer system; Ex. 10;

NEORSD's Green Infrastructure Grant (GIG) Program

50.     NEORSD is a governmental entity authorized to co-ordinate, control, manage, direct and/or regulate the discharge of storm waters in Cleveland and Cuyahoga County;  See *Northeast Regional Sewer Dist. v. Bath Twp.,* 144 Ohio St.3d 387 (2015);

51.     NEORSD has adopted and implemented a Regional Stormwater Management Program to co-ordinate, manage, direct and/or control the discharge of storm water in Cleveland and northeast Ohio; Ex. 7;

52.     NEORSD's Regional Stormwater Management Program is intended to address, mitigate and/or reduce storm water flooding in Cleveland and northeast Ohio through planning, maintenance and construction of storm water related projects.  Id.;

53.     NEORSD created and operates the "Green Infrastructure Grant Program" (GIG) as part of its Regional Stormwater Management Program"; Id.;

54.     The GIG program is open to NEORSD member communities, governmental entities, non-profit organizations or businesses working in partnership with their communities in the combined sewer area to implement green infrastructure projects that remove storm water from NEORSD's combined sewer system.  Id.;

55.     GIG program projects are intended to reduce the volume of storm water flowing into NEORSD's combined sewerage system; Id.;

56.     The GIG program reduces stress on NEORSD's combined sewerage system by diverting storm water into "green" infrastructure;

57.     The GIG program diversion of storm water enhances and improves the operation of NEORSD's combined sewerage system; Id.;

58.     Bio retention basins which accept and divert storm water from NEORSD's combined sewerage system are "green" infrastructure approved by the GIG program; Id.;

59.     Through the GIG program NEORSD actively partners with communities to remove storm water from its combined sewer systems by diverting said storm water into "green infrastructure"; Id.

60.     Through the GIG program NEORSD actively joined with Cleveland to remove KMPL storm water from its combined sewer system.  Id.; Exs. 7-11;

61.     Through the GIG program NEORSD actively diverted KMPL storm water away from its combined sewer system. Id.;

62.     NEORSD approved and authorized the construction of bio retention cells in the KMPL using NEORSD funds for the purpose of diverting storm water from its combined sewer system; Id.

63.     All GIG grant applications are reviewed by NEORSD to assure compliance with NEORSD storm water diversion goals and regulations. Ex. 7;

64.     The KMPL GIG application was reviewed by NEORSD personnel to assure compliance with NEORSD storm water diversion regulations and goals; Ex. 8-10;

65.     Upon assignment of the KMPL GIG application, Cleveland's Mayors Office of Capital Projects assumed responsibility for the application; Ex. 5, 8-10;

66.     Pursuant to NEORSD GIG requirements, Cleveland designed and submitted KMPL GIG improvements (blue prints, design drawings and related analysis) to NEORSD for review and approval; Ex. 7-10;

67.   Cleveland's KMPL GIG improvements proposed the placement and construction of bio retention basins in the KMPL to divert up to 800,000 gallons of KMPL storm water per annum from NEORSD's combined sewerage system;  Id.;

68.   Cleveland's KMPL GIG improvements placed bio retention basin along the western Property line of the KMPL adjacent Plaintiffs land and Building; Exs.8-11;

69.   Cleveland's KMPL GIG improvements intentionally placed bio retention basins within 10 feet of Plaintiffs Building; Id.;

70.   The KMPL bio retention basins were intentionally designed to discharge KMPL storm water directly into the ground adjacent Plaintiffs land and Building; Id.;

71.   The bio retention basins constructed on the western property line of the KMPL intentionally discharge KMPL storm water into, onto and against Plaintiffs land and Building; Id.;

72.   The KMPL bio retention basins were intended to discharge up to 800,000 gallons per annum of storm water into the ground within 10 feet of Plaintiffs Building and Property; Id.;

73.   Cleveland proposed the design and placement of the KMPL bio retention basins within 10 feet of Plaintiffs Building and Property; Id.;

74.   NEORSD reviewed and approved Cleveland's KMPL bio retention design and placement in the KMPL; Id.;

75.   NEORSD intentionally modified Cleveland's KMPL GIG bio retention basins to maximize the volume of KMPL storm water that would be discharged into the ground adjacent Plaintiff's Property; Ex. 8-9;

76.   Defendants knew that Plaintiffs Building contained a basement at least 12' below the grade and downstream of the KMPL;

77.     Defendants knew that the basement in Plaintiff's Building extended several feet below the lowest point of the KMPL bio retention basins;

78.     Defendants intended to divert KMPL storm waters from NEORSD's combined sewerage system by discharging said waters into the ground adjacent Plaintiffs Property; Exs. 8-11;

79.     Defendants knew that Plaintiffs land and Building was downstream from the KMPL bio retention basins; Id.;

80.     NEORSD expressly approved Cleveland's proposed KMPL GIG improvement construction plans; Exs. 8-11;

81.     On November 8, 2018 Cleveland and NEORSD entered into a GIG agreement to implement the KMPL GIG improvements.  Ex. 10;

82.     The GIG agreement expressly states that NEORSD's purpose in awarding the grant was to remove storm water from NEORSD's combined sewer system. Id. at 1-2;

83.     The GIG agreement expressly states that the project will remove approximately 934,799.76 gallons of KMPL storm water annually from NEORSD's combined sewer system. Id at 2;

84.     NEORSD paid Cleveland $249,583.00 to construct the bio retention basins in the KMPL for the purpose of diverting storm water from its combined sewer system. Id. at 3;

85.     The GIG agreement obligated NEORSD to provide project oversight on any and all activities related to the expenditure of grant funds related to the construction of KMPL GIG improvements. Id. at 3-4;

86.     The GIG agreement obligated NEORSD to provide Cleveland technical assistance for project design, specifications, construction and/or installation of the KMPL GIG improvements; Id.;

87.     The KMPL GIG agreement granted NEORSD review and approval authority over the KMPL bio retention basin plans and specifications; Id.;

88.     The KMPL GIG agreement required Cleveland to construct the KMPL bio retention basins pursuant to NEORSD approved plans, and pursuant to NEORSD on site construction inspection and oversight. Id. at 4;

89.     The KMPL GIG agreement grants NEORSD the right to control the operation and management of the KMPL bio retention basins for up to 20 years; Id. at 5;

90.     On or about February 2019 Cleveland entered into contract, pursuant to public bid, to construct the KMPL GIG Improvements;

91.     Cleveland's contractor completed the KMPL GIG Improvements in late May or early June 2019;

92.     Cleveland's contractor constructed the KMPL GIG Improvements in accordance with Cleveland's plans and specifications, as approved by NEORSD;

93.     Defendants were aware that the Plaintiffs Property was improved with a two story medical office Building with basement office suites at least 12' below the KMPL grade;

94.     Plaintiffs Property has always been available for inspection by Defendants;

95.     Defendants knew that Plaintiffs Property was immediately adjacent and downstream from the KMPL and the basins;

96.     Since June 2019, Plaintiffs Property and Building has been intermittently flooded by storm waters entering the bio retention basins constructed in the KMPL by Defendants;

97.     Since June 2019, Plaintiffs Property and Building has been flooded over 50 times by KMPL storm water discharged into the KMPL bio retention basins by Defendants;

98.     Since June 2019 Plaintiffs Property and Building has been flooded over 50 times by storm water intentionally diverted by Defendants from their respective sewer systems;

99.     Defendants intentionally and regularly divert / discharge KMPL storm water onto Plaintiffs Property immediately adjacent the western Property line of the KMPL;

100.    Defendants intentionally and regularly divert / discharge KMPL storm water onto Plaintiffs land within 10 feet of Plaintiffs Building;

101.    The flooding of Plaintiffs land and Building is the foreseeable result of Defendants discharge of KMPL storm waters into the KMPL bio retention basins;

102.    The KMPL bio retention basins were intentionally designed and constructed to maximize the discharge of KMPL storm waters into the ground adjacent Plaintiffs Property and Building;

103.    Upon completion of the KMPL GIG construction, including but not limited to the construction of the bio retention basins in June 2019, KMPL storm waters flooded Plaintiffs Property and Building, damaging the basement condominium suite finishes (carpet, drywall, mold);

104.    In 2021 the repeated flooding of its Property with KMPL storm water structurally damaged the eastern most walls, floors and structure of Plaintiff's Building;

105.    In 2022, the continued flooding of Plaintiffs Property with KMPL storm water caused additional structural damage, cracks and/or failures in the western basement floor of Plaintiffs Building;

106.    Since completion of the KMPL GIG Improvements, Plaintiffs Building has been flooded by KMPL storm waters over 50 times, causing Plaintiff to incur substantial Property damages, lost rents and associated clean up expense;

107.    The condominium units in the basement of the Property and Building are unusable due to damage caused by KMPL storm water;

108.    Defendants continuing discharge of KMPL storm waters onto Plaintiffs Property will continue to cause substantial damage to the integrity of Plaintiffs Property and Building;

109.    Unless abated, Defendants diversion of KMPL storm water away from NEORSD's combined sewer system onto Plaintiffs Property will continue to cause substantial damage to Plaintiffs Property and Building;

110.    Defendants diversion and/or discharge of KMPL storm water has destroyed Plaintiffs "reasonable invest-backed expectations" for the Property and Building;

111.    Defendants have a legal duty not to unreasonably divert, drain and /or direct KMPL storm waters into or onto Plaintiffs Property;

112.    Defendants have a legal duty not to divert, drain or direct storm waters from their sewer systems onto Plaintiffs Property.

113.    Cleveland has a legal duty not to operate the KMPL in a manner that damages Plaintiff's Property and/or Buildings;

114.    Cleveland has a legal duty not to operate the KMPL in a manner that destroys Plaintiffs "reasonable investment-backed expectations" in their Property.

115.    Defendants have a legal duty not to discharge KMPL storm water onto Plaintiffs Property and Buildings in a manner that damages Plaintiff's land and/or Buildings;

116.    Defendants have intentionally diverted and discharged KMPL storm waters onto Plaintiffs Property without consent or permission;

117.    Defendants have unreasonably diverted and discharged KMPL storm water onto Plaintiff's Property without consent or permission;

118.    Defendants have failed to employ any measures to protect Plaintiff's Property from flooding caused by the discharge / diversion of KMPL storm waters;

119.    Defendants diversion and/or discharge of KMPL storm water onto Plaintiffs Property and into Plaintiffs Building has caused structural damage to Plaintiffs Property and Building;

120.    Cleveland's discharge of storm waters from its off street parking facility has damaged Plaintiff's Property and Building;

121.    Defendants diversion / discharge of KMPL storm water has substantially damaged and/or eliminated Plaintiffs "reasonable investment backed expectations" for their Property;

122.    Defendants have violated their duty not to construct, use, operate and/or control storm water basins in the KMPL that damage Plaintiffs Property and that unreasonably interfere with Plaintiffs use and commercial expectations for their Property and Building;

123.    Defendants diversion / discharge of KMPL storm waters from Cleveland's off street parking facility has damaged the floors, walls and structure of Plaintiffs Building;

124.    Defendants have caused KMPL storm water to repeatedly flood Plaintiff's Property and Building;

125.    Plaintiffs Property and Building continues to be damaged by storm waters diverted and/or discharged by Defendants from the KMPL;

126.    Defendants knew that storm waters diverted into the KMPL basins would flood and damage Plaintiff's Property and Building;

127.    Plaintiffs never consented to accept KMPL storm waters;

128.    Defendants have taken Plaintiffs Property and Building for the governmental purpose of discharging, managing and/or controlling KMPL storm water;

129.    Defendants acted in their governmental capacity when approving, placing, locating and operating the KMPL basins adjacent Plaintiffs Property in the KMPL;

130.    Plaintiffs Property and Building have been substantially damaged by the Defendants diversion and discharge of KMPL storm waters;

131.    Defendants diversion of KMPL storm waters has denied Plaintiffs the quiet enjoyment of their Property;

132.    The damage to Plaintiffs Property and Building was caused in course of Cleveland operating its off street KMPL parking facility;

133.    The damage to Plaintiffs Property and Building was caused by Defendants diversion of KMPL storm waters away from their respective sewer systems;

134.    The damages to Plaintiffs Property and Building will continue unless Defendants are enjoined from discharging KMPL storm waters onto Plaintiffs Property and Building;

135.    The damages to Plaintiffs Property and Buildings will continue unless Defendants are enjoined from diverting KMPL storm water away from the NEORSD combined sewer system onto Plaintiffs Property;

136.    The damages to Plaintiffs Property and Building caused by Defendants conduct were foreseeable and avoidable.

**FIRST CAUSE OF ACTION – CLEVELAND AND NEORSD
INVERSE CONDEMNATION – TAKING OF PROPERTY IN VIOLATION
OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE
UNITED STATES CONSTITUTION**

137.    Plaintiffs restate and incorporate the allegations set forth in ¶¶1-136;

138.    Defendants discharge of KMPL storm waters from Cleveland's off street KMPL parking facility onto Plaintiffs Property constitutes an unconstitutional governmental confiscation,

destruction, occupation, use, seizure and/or possession of Plaintiff's Property in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution;

139.   NEORSD's diversion of KMPL storm waters from its sewerage system onto Plaintiff's Property constitutes an intentional unconstitutional governmental confiscation, destruction, occupation, use, seizure and/or possession of Plaintiff's Property in violation of the 42. U.S.C. §1983 and the Fifth and Fourteenth Amendments to the U.S. Constitution;

140.   Defendants diversion of KMPL storm water from their respective sewerage systems onto Plaintiffs Property constitutes an intentional unconstitutional governmental confiscation, destruction, seizure, use and/or possession of Plaintiff's Property in violation of 42 U.S.C. §1983 and the Fifth and 14th Amendments of the US Constitution;

141.   Cleveland's discharge of storm water in the operation of its KMPL facility constitutes an intentional unconstitutional governmental confiscation, destruction, seizure, use and/or possession of Plaintiff's Property in violation of 42 U.S.C. §1983 and the Fifth and 14th Amendments of the US Constitution

142.   Defendants diversion of KMPL storm waters away from NEORSD's combined sewer system was intentional;

143.   Defendants discharge of KMPL storm waters onto Plaintiffs Property was intentional;

144.   The flooding of Plaintiffs Property was the foreseeable result of Defendants unconstitutional diversion / discharge of KMPL storm waters onto Plaintiffs Property;

145.   The flooding of Plaintiffs Property was the direct, natural and/or probable result of Defendants intentional discharge of KMPL storm water onto Plaintiffs Property;

146.   Defendants diversion and/or discharge of KMPL storm waters onto Plaintiffs Property constitutes a unconstitutional storm water flowage easement;

147.    Defendants have denied Plaintiffs of their reasonable "investment-backed expectations" in their Property;

148.    Defendants discharge of KMPL storm waters onto Plaintiffs Property has caused and will continue to cause substantial structural damage to Plaintiffs Building;

149.    The damages resulting from Defendants unconstitutional diversion / discharge of KMPL storm waters onto Plaintiffs Property were foreseeable;

150.    The flooding and damages Plaintiffs incurred as a result of Defendants intentional and unconstitutional diversion of KMPL storm waters away from their respective storm sewer systems onto Plaintiffs Property was foreseeable;

151.    The flooding and damages Plaintiffs incurred as a result of Defendants intentional diversion of KMPL storm waters onto Plaintiffs Property have denied Plaintiffs the quiet enjoyment and the "reasonable investment-backed expectations" (commercial use) of their Property;

152.    Defendants, jointly and severally, have violated Plaintiff's constitutional Property rights under the Fifth and Fourteenth Amendments to the U.S. Constitution;

153.    Defendants conduct has caused and continues to cause Plaintiff to suffer substantial Property damages, incur attorney fees and other costs in response to Defendants' wrongful and unconstitutional conduct;

154.    The Fifth and Fourteen Amendments to the United States Constitution requires Defendants to compensate Plaintiffs for all Property rights taken from them and for all governmental use of Plaintiffs Property;

155.    The Fifth and Fourteen Amendments to the United States Constitution requires Defendants to compensate Plaintiffs for all damages arising from the unconstitutional taking of Plaintiffs Property;

156.    Defendants have failed to fulfill their duty to commence an appropriation proceeding and/or to pay Plaintiffs just compensation for their continuing invasion, seizure, use of and damage to Plaintiff's Property;

157.    Plaintiffs have no plain, adequate, complete remedy at law to obtain a jury assessment of compensation and damages for their Property taken by Defendants for governmental use without just compensation;

158.    Plaintiffs have no plain, adequate, complete remedy at law to obtain a jury assessment of compensation and damages arising from Cleveland's negligent operation of its off street municipal parking facility;

159.    Plaintiffs have no plain, adequate, complete remedy at law to obtain a jury assessment of compensation and damages arising from Defendants unconstitutional diversion / discharge of KMPL storm water away from NEORSD's combined sewer system;

160.    Defendants are jointly and severally liable pursuant to the Fifth and Fourteenth Amendments to the United States Constitution for all damages to the fair market value of Plaintiffs Property caused by their unlawful use of the Property and damage thereto, together with interest thereon;

161.    Pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. §1983 and 42 U.S.C. §1988, Defendants' are jointly and severally liable to Plaintiff for attorney fees, costs and expenses incurred in vindicating Plaintiffs constitutional right to just compensation.

**SECOND CAUSE OF ACTION – CLEVELAND AND NEORSD
INVERSE CONDEMNATION – UNCONSTITUTIONAL TAKING OF
PROPERTY IN VIOLATION OF
ARTICLE 1, §19 OF THE OHIO CONSTITUTION**

162.    Plaintiffs reassert and incorporate by reference herein the allegations contained in

paragraphs 1-161.

163.    Defendants discharge of KMPL storm waters from Cleveland's off street parking facility

onto Plaintiffs Property constitutes an unconstitutional confiscation, destruction, occupation, use,

seizure and/or possession of Plaintiff's Property in violation of Article 1, §19 of the Ohio

Constitution;

164.    Defendants diversion of KMPL storm water from their respective sewer systems onto

Plaintiffs Property constitutes a confiscation, destruction, seizure, use and/or possession of

Plaintiff's Property and constitutes an unconstitutional taking under Article 1, §19 of the Ohio

Constitution;

165.    Cleveland's operation of its KMPL facility constitutes a confiscation, destruction,

seizure, use and/or possession of Plaintiff's Property and constitutes an unconstitutional taking

under Article 1, §19 of the Ohio Constitution;

166.    Defendants, jointly and severally, have violated Plaintiff's fundamental Property rights as

secured by Article 1, §19 of the Ohio Constitution and caused Plaintiff to suffer substantial

Property damages, incur attorney fees and other costs in response to Defendants wrongful and

unconstitutional actions;

167.    Pursuant to Article 1, §19 of the Ohio Constitution and Ohio Revised Code Chapter 163,

Defendants have a clear legal duty to compensate Plaintiffs for damages and for Property rights

taken from them;

168.    Defendants have failed to fulfill their statutory duty to commence an appropriation proceeding under Ohio law and to pay Plaintiffs just compensation for their continuing invasion, seizure, use and destruction of Plaintiffs Property.

169.    Plaintiffs have no plain, adequate, complete remedy at law to obtain a jury assessment of compensation and damages for their Property taken by Defendants without just compensation.

170.    Plaintiffs have no plain, adequate, complete remedy at law to obtain a jury assessment of compensation and damages arising from Defendant's diversion of storm water away from their sewer systems and onto Plaintiffs land and Building;

171.    Plaintiffs have no plain, adequate, complete remedy at law to obtain a jury assessment of compensation and damages arising from Cleveland's negligent operation of its KMPL facility;

172.    Pursuant to the Article I, §19 of the Ohio Constitution, and Ohio Revised Code Chapter 163 Defendants are, jointly and severally, liable to Plaintiff for the fair market value of their Property and improvements thereon, and for damages, taken from the date that compensation is first paid or secured by Plaintiff with interest thereon;

173.    Pursuant to Article 1, §19 of the Ohio Constitution, Ohio Revised Code Chapters 163 and 2731 Defendants' are jointly and severally liable to Plaintiffs for attorney fees, costs and expenses incurred in vindicating their constitutional right to just compensation.

174.    Plaintiffs Ohio Supreme Court Practice Rule X, §4(B) affidavits have been previously filed with the Cuyahoga County Court of Common Pleas in this case.

### THIRD CAUSE OF ACTION – CITY OF CLEVELAND
### TRESPASS – NEGLIGENT DIVERSION OF KMPL
### STORM WATERS

175.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1- 174;

176.    Defendants have legal duty not to unreasonably divert, drain and /or direct KMPL storm waters into or onto Plaintiffs Property;

177.    Cleveland has a legal duty not to divert, drain or direct storm waters from its storm sewer system onto Plaintiffs Property;

178.    Cleveland has a legal duty not to operate the KMPL in a manner that damages Plaintiff's Property and Building;

179.    Cleveland has a legal duty not to operate the KMPL in a manner that destroys Plaintiffs "reasonable investment-backed expectations" in their Property.

180.    Cleveland has a duty not to discharge KMPL storm water onto Plaintiffs Property and Building in a manner that damages Plaintiff's land and/or Buildings;

181.    Cleveland intentionally discharges KMPL storm waters onto Plaintiff's Property without consent or permission;

182.    Cleveland has failed to employ any measures to protect Plaintiff's Property from flooding caused by the discharge / diversion of KMPL storm waters;

183.    Cleveland's discharge of KMPL storm water onto Plaintiffs land and into Plaintiffs Building has caused structural damage to Plaintiffs land and Building;

184.    Cleveland's discharge off storm waters from its off street parking facility has damaged Plaintiff's Property;

185.    Cleveland's operation of its KMPL facility has damaged Plaintiffs Property;

186.    Cleveland's discharge of KMPL storm water has substantially damaged and/or eliminated Plaintiffs "reasonable investment backed expectations" for their Property;

187.    Cleveland has violated its duty not to discharge KMPL storm water in a manner that damages Plaintiffs Property and that unreasonably interfere with Plaintiffs use and commercial expectations for their Property;

188.    Cleveland's discharge of KMPL storm waters from its off street parking facility has damaged the floors, walls and structure of Plaintiffs Building;

189.    Cleveland has caused KMPL storm water to repeatedly flood Plaintiff's Property;

190.    Plaintiffs Property continues to be damaged by KMPL storm waters;

191.    Cleveland knew or should have known that KMPL storm waters diverted into the KMPL basins would flood and damage Plaintiff's land and Building;

192.    Plaintiff never consented to accept KMPL storm waters;

193.    Cleveland's placement and operation of KMPL bio retention basins is a breach of its duty to protect Plaintiffs land and Building from the unreasonable discharge of KMPL storm waters;

194.    Cleveland breached its duty to Plaintiff by discharging KMPL storm water in a manner that damages Plaintiffs land and Buildings;

195.    Plaintiffs land and Buildings have been substantially damaged by Cleveland's discharge of KMPL storm waters onto their Property;

196.    Cleveland's diversion of KMPL storm waters has denied Plaintiffs the quiet enjoyment of their Property;

197.    The damage to Plaintiffs Property and Building resulted from Cleveland's operation of its KMPL parking facility;

198.    The damage to Plaintiffs Property will continue unless Cleveland is enjoined from discharging KMPL storm waters onto Plaintiffs Property;

199.    The damage to Plaintiffs Property will continue unless Cleveland is enjoined from operating its KMPL facility in a negligent manner;

200.    The damage caused by Cleveland's discharge of KMPL storm waters are foreseeable and avoidable.

201.    The damage caused by Cleveland's negligent operation of the KMPL are foreseeable and avoidable.

WHEREFORE, Plaintiffs demand that:

a.  Judgment, jointly and severally, be entered against the Defendants in their favor;

b.  Defendants compensate them for the violation of their rights under the U.S. and Ohio Constitutions;

b.  Defendants, jointly and severally, be ordered to pay Plaintiffs compensatory and actual damages suffered as a result of Defendants conduct in an amount in excess of Twenty Five Thousand ($25,000) dollars, plus interest and costs;

c.  Defendants, their agents, employees, and servants be enjoined and restrained during the pendency of this action and permanently from infringing Plaintiffs Property rights by unreasonably and impermissibly diverting and redirecting KMPL surface, storm and discharge waters onto Plaintiffs Property;

d.  Plaintiffs Property be protected from KMPL storm waters;

e.  A Peremptory Writ of Mandamus issue compelling Defendants to initiate appropriation proceedings pursuant to Ohio Revised Code Chapter 163;

f.  An Alternative Writ issue pursuant to Ohio Supreme Court Practice Rule X, §6, to show cause why Defendants should not be compelled to initiate appropriation proceedings pursuant to Ohio Revised Code Chapter 163;

g.  Plaintiffs be awarded their attorney fees, costs, and expense; and,

h.  Such other and further relief as may be available at law or in equity issue in its favor.

JURY DEMAND

Plaintiff demands trial by jury on all claims triable by jury asserted herein.

Respectfully submitted,

s/ Michael A. Dolan
Michael A. Dolan (0051848)
The Dolan Law Firm, LLC
3890 Rocky River Drive, Ste. 1S
Cleveland, OH 44111
P. 216.780.3036
E. mdolan3@att.net

*Attorneys for Plaintiffs*