IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RIVEREDGE DENTISTRY PARTNERSHIP, et al., ) | Case No. 1:22-cv-1007 |
| ) | |
| Plaintiffs, ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| v. ) | |
| ) | |
| CITY OF CLEVELAND, et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |

Defendant Northeast Ohio Regional Sewer District ("the District") seeks partial dismissal of plaintiffs'[1] fourth amended complaint, arguing that plaintiffs' takings claims against the District are barred under claim preclusion and law of the case by the pre-removal, state court dismissal with prejudice of the then sole-plaintiff's negligence claim against the District.

Because the elements of Ohio claim preclusion are met, the District's motion to dismiss (ECF Doc. 19) must be GRANTED, and plaintiffs' takings claims against the District must be DISMISSED.

---

[1] The plaintiffs in this matter are: (i) Riveredge Dentistry Ltd. Partnership; (ii) West Valley Condominium Association; (iii) the Darshana A. Shah Trust; (iv) Dr. Benedict Kim; (v) Kamm Property Inc.; and (vi) Riveredge Dentistry, Inc. (collectively, "plaintiffs").

I.        **Factual Background**[2]

Plaintiffs are owners, managers, and renters of condominium units in the Kamm's Corners neighborhood of Cleveland, Ohio, which is adjacent to and downgrade from a municipal parking lot owned and operated by the City of Cleveland ("Cleveland"). ECF Doc. 14 at 4–7. Up until mid-2019, a curb along the property line with the parking lot diverted stormwater away from the condominium building and into the District's combined sewer system. ECF Doc. 14 at 7–8. The rest of the parking lot and the other adjoining properties, however, regularly flooded. ECF Doc. 14 at 8; ECF Doc. 14-5 at 2.

In December 2015, a local non-profit organization applied for a grant through the District's Green Infrastructure Grant Program to repair the parking lot and address the flooding problem. ECF Doc. 14 at 8; ECF Doc. 14-2 at 2; ECF Doc. 14-10 at 3. The grant program was intended to fund infrastructure projects that diverted water from the combined sewer system into "stormwater source control measures that store, filter, infiltrate, harvest, and reuse or evapotranspiration stormwater" (*i.e.*, rain gardens, bioretention basins, permeable pavement, etc.). ECF Doc. 14-7 at 7, 13–14; *see also* ECF Doc. 14-10 at 2–3. As part of the application process, the non-profit organization submitted a design for the construction of stormwater basins. ECF Doc. 14 at 8; ECF Doc. 14-5 at 3, 7–9; ECF Doc. 14-7 at 19.

In January 2017, the District approved the non-profit organization's grant application. ECF Doc. 14 at 8. But because the non-profit organization lacked ownership and control of the parking lot, Cleveland replaced the non-profit organization as the grant recipient. ECF Doc. 14 at 8; ECF Doc. 14-5 at 3; ECF Doc. 14-10 at 3. Cleveland then submitted its own infrastructure

---

[2] The recitation of facts in this section is derived from plaintiffs' fourth amended complaint (ECF Doc. 14), which on a motion to dismiss we must construe in a light most favorable to plaintiffs. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 893 (6th Cir. 2002).

2

improvement designs and construction plans for the parking lot, which, unlike the non-profit organization, placed the stormwater basins along the property line adjacent to the condominium property. ECF Doc. 14 at 10–11; ECF Doc. 14-5 at 3. After several rounds of review and modification before the District, the District approved Cleveland's design and construction plans. ECF Doc. 14 at 10–12; *see also* ECF Doc. 14-8; ECF Doc. 14-9. And Cleveland and the District entered into a grant program agreement setting forth the terms of its implementation. ECF Doc. 14-10 at 2–10.

In May-June 2019, Cleveland completed all improvements on the parking lot. ECF Doc. 14 at 13. Subsequent to completion, stormwater from the basins has flooded the condominium building over 50 times. ECF Doc. 14 at 13–14. The initial flood damage was limited to the carpet and drywall of the basement condominium units. ECF Doc. 14 at 14. But beginning 2021, the condominium began to suffer structural damage, rendering the basement units unusable. ECF Doc. 14 at 3, 14–15.

## II. Relevant Procedural History

### A. State Court Proceedings

On May 28, 2020, plaintiff Riveredge Dentistry Partnership ("Riveredge") filed a complaint in the Cuyahoga County, Ohio, Court of Common Pleas against the City of Cleveland and its contractor on the infrastructure project. ECF Doc. 1-2 at 2–9. This was followed by two amended complaints which added the District as a defendant. ECF Doc. 1-3 at 2–10; ECF Doc. 1-4 at 2–13. The second amended complaint alleged that the District was negligent in its review and approval of construction plans that diverted water into Riveredge's property. *See* ECF Doc. 1-4 at 4, 6–12. As relief, Riveredge sought damages and injunctive relief mandating that the

stormwater basins be removed or altered to protect against further flooding. ECF Doc. 1-4 at 12–13.

On November 4, 2020, Cleveland answered the second amended complaint. ECF Doc. 1-4 at 75–81. Conversely, the District moved for partial dismissal of the second amended complaint. ECF Doc. 1-6 at 5. The District argued that the complaint failed to establish a claim of negligence because the allegations established that the District did not design, construct, or locate the stormwater basins and the grant agreement disclaimed any intent to create a joint venture with Cleveland. Online Docket for Cuyahoga Cnty. Ct. of Comm. Pleas, No. 20-932884, motion dated 11/06/2020 at 5–6. The District alternatively argued that it was immune from tort liability under Ohio's sovereign immunity statute, Ohio Rev. Code § 2744 *et seq*.[3] *Id.* at 6–13. Riveredge filed an opposition brief. Online Docket for Cuyahoga Cnty. Ct. of Comm. Pleas, No. 20-932884., opposition brief dated 11/13/2020.

On January 11, 2021, the trial court issued a journal entry granting the District's motion and dismissing with prejudice Riveredge's negligence claim against the District. ECF Doc. 1-4 at 107. The court made the findings that the District "was not responsible for the design, construction, location, or operation and maintenance of the water retention basins. [The District's] only involvement was to provide funding for the retention basin project. Accordingly, [Riveredge's] second amended complaint fails to raise a viable claim against [the District]." *Id.* (mixed letter case added). On February 3, 2021, the trial court certified the dismissal of the District as a defendant, under Ohio Civ. R. 54(B). ECF Doc. 1-4 at 108.

---

[3] The statute provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). Subsection (B)(2) provides a limited exception for property loss caused by "the negligence performance of acts by [a political subdivision's] employees with respect to proprietary functions of the political subdivision[]." Ohio Rev. Code § 2744.02(B)(2).

On February 6, 2021, Riveredge timely appealed. ECF Doc. 1-6 at 4. Riveredge's Ohio Court of Appeals brief argued that the second amended complaint plausibly alleged a negligence claim against the District: (i) that the district negligently diverted stormwater from its combined sewer system onto Riveredge's property; and (ii) that the District negligently approved the placement of stormwater basins in such proximity to Riveredge's property that damage resulted. Online Docket for Eighth Dist. Ct. of App., No. CA-21-110275, appellant's brief at 12. Riveredge further argued that the District's operation of its sewer system was a "propriety function" excepted from sovereign immunity under Ohio Rev. Code § 2744, which also did not apply to Riveredge's claim for equitable relief. *Id.* at 12–14. The District filed an opposition brief, to which Riveredge replied. Online Docket for Eighth Dist. Ct. of App., No. CA-21-110275, docket sheet.

On October 28, 2021, the Ohio Court of Appeals overruled Riveredge's assignment of error and affirmed the trial court's dismissal of Riveredge's negligence claim against the District. ECF Doc. 14-12; *see also Riveredge Dentistry P'ship v. City of Cleveland*, 2021-Ohio-3817 (Ohio Ct. App. 2021). The court determined that the District was immune from liability for damages because the second amended complaint alleged harm resulting from the inadequate design/construction of the stormwater basins, which was a "governmental function" shielded from liability for damages, and not the maintenance, operation, or upkeep of its combined sewer system, which would be a "proprietary function" excepted from sovereign immunity. *See* ECF Doc. 14-12 at 10–18. In so ruling, the court rejected Riveredge's argument that stormwater basin was inherently linked to the District's operation of its combined sewer system:

> {¶36} … [T]he documents incorporated into the four corners of the second amended complaint unambiguously demonstrate that the [District's] only involvement in this manner was approving and awarding the city grant funds to complete a project that the sewer district deemed

5

consistent with the objectives of the Green Infrastructure Grant Program. The Agreement expressly stated that (1) the city is responsible for the operation and maintenance of the water-basin project, (2) the Agreement was not intended to create a joint venture, partnership or agency relationship between the city and the [District], and (3) the city was responsible for completing the storm-water basin project pursuant to the approved design and construction plans.  Moreover, appellant concedes in the second amended complaint that (1) the [District] did not construct the storm-water retention basins; (2) the [District] did not contract with [the contractor]; and (3) the city, and not the [District], "designed, constructed, and located the basins."  * * *

{¶37} … Nevertheless, even if this court were to conclude that the sewer district was intrinsically involved in the design and construction of the storm-water retention basins that have repeatedly flooded [Riveredge's] property, its role in this matter was certainly not related to the maintenance, operation, or upkeep of its own sewerage system.

{¶38} There is no doubt that the Green Infrastructure Grant Program was created to "remove stormwater from the combined sewer system and reduce the release of combined sewage into the environment."  … In a broad sense, we agree that the environmental projects funded by the grant program incidentally improve the [District's] ability to maintain and operate its sewer districts.  However, the General Assembly has clearly distinguished negligent acts related to the design, construction, or reconstruction of a sewerage system from those related to a maintenance, operation, or upkeep issue.  If this court were to adopt [Riveredge's] position in this matter, the distinction between these functions would be eliminated.  The fact that the [District's] sewerage system benefitted, albeit indirectly, from the storm-water basin construction project on city property did not cause the function to become proprietary.  Rather, the prevailing fact in this case is that the [District] is not responsible for the operation or maintenance of the storm-water retention basins located on the city's property.

* * *

{¶42} Having found that the sewer district is immune and that no exception to immunity applies, we find that [Riveredge] has failed to state a negligence claim against the district upon which relief may be granted. * * *

ECF Doc. 14-12 at 15–18 (citations omitted).

6

The Ohio Court of Appeals also determined that Riveredge could not proceed on its claim for injunctive relief:

> {¶43} … The materials attached to the second amended complaint demonstrate that the subject property and the storm-water retention basins constructed thereon are owned and operated by the city.  The [District] has no control over the property or the water-retention basins and, therefore, has no authority or legal obligation to remove or alter the storm-water retention basins in order to remedy the ongoing flooding issues.

ECF Doc. 14-12 at 18.

On February 9, 2022, the Ohio Court of Appeals returned the case to the trial court docket.  ECF Doc. 1-6 at 3.  On May 10, 2022, the trial court granted Riveredge leave to file a third amended complaint, which it filed on May 11, 2022, and joined the remaining plaintiffs to the action.  ECF Doc. 1-6 at 1; Online Docket for Cuyahoga Cnty. Ct. of Comm. Pleas, No. 20-932884, motion dated 4/15/2022.  Based on the same factual allegations as the second amended complaint, the third amended complaint reasserted negligence claims against Cleveland and the District.  ECF Doc. 1-5 at 2–14.  It added, however, takings claims under the U.S. and Ohio constitutions.  ECF Doc. 1-5 at 15–16.  And Riveredge added to its requests for relief a prayer for a writ of mandamus to compel defendants to initiate appropriation proceedings.  ECF Doc. 1-5 at 17.  On June 7, 2022, Cleveland filed its answer to the third amended complaint.  ECF Doc. 1-5 at 174–88; ECF Doc. 1-6 at 1.

    **B.**    **Federal Court Proceedings**

On June 10, 2022, Cleveland filed a notice of removal, to which the District consented.  ECF Doc. 1.  On June 28, 2022, the parties consented to magistrate judge jurisdiction.  ECF Doc. 4.  On July 1, 2022, the court granted the District an extension of the time within which to respond to the third amended complaint.  Docket Entry dated 7/01/2022.  And on July 20, 2022, the court held a case management conference at which the court vacated the deadline for the

District's response in light of Riveredge's unopposed proposal to file a fourth amended complaint. Docket Entry dated 7/20/2022.

On August 22, 2022, Riveredge filed a fourth amended complaint which included all plaintiffs to the action. ECF Doc. 14. The fourth amended complaint asserted takings claims under the U.S. and Ohio constitutions against both defendants and a negligence claim against Cleveland. ECF Doc. 14 at 17–25. Factually, the fourth amended complaint added that plaintiffs discovered cracks in the condominium's basement and along the eastern wall in 2021, during the pendency of the state court appeal. ECF Doc. 14 at 3. Plaintiffs alleged that engineers later advised that the eastern basement wall and floors were damaged and compromised by the flooding from the stormwater basins, rendering the basement unusable. ECF Doc. 14 at 3, 14–15.

On September 20, 2022, Cleveland filed an answer to the fourth amended complaint. ECF Doc. 18. Conversely, the District filed a motion to dismiss for failure to state a claim upon which relief can be granted because the claims against it are barred by the state courts' decisions.[4] ECF Doc. 19; ECF Doc. 20. With the filing of opposition and reply briefs, the matter is ripe for decision. ECF Doc. 13; ECF Doc. 25; ECF Doc. 27.

**III.     Law and Analysis**

   **A.     Subject Matter Jurisdiction**

Before proceeding to the merits of the District's motion, the court has an independent obligation to ensure that subject-matter jurisdiction exists. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). The defendants removed this action to federal court because the third amended complaint (like the fourth amended complaint after it) alleged that their actions "constitute an

---

[4] The parties' arguments for and against dismissal are discussed in more detail in the Law and Analysis section below.

unconstitutional taking under the 5th and 14th Amendments of the United States Constitution." ECF Doc. 1 at 2. Because plaintiffs' federal takings claim "aris[es] under the Constitution … of the United States," we have original jurisdiction over that claim. 28 U.S.C. § 1331; 28 U.S.C. § 1441(a). By extension, we have supplemental jurisdiction over plaintiffs' parallel state takings claim and related negligence claim. 28 U.S.C. § 1367(a). And as of June 2019, before Riveredge filed the first complaint, property owners no longer need a state court ruling on a takings claim before they can raise the claim in federal court. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019); *see also Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 733 (6th Cir. 2022).

### B. Rule 12(b)(6) Standard

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Claims barred by the claim preclusion doctrine or by the law-of-the-case doctrine may be dismissed on this basis. *See Helfrick v. Metal Container Corp.*, 102 F. App'x 451, 452 (6th Cir. 2004); *see also, e.g.*, *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2020 U.S. Dist. LEXIS 165258, at *27–31 (S.D. Ohio Sept. 10, 2020); *Pearson Educ., Inc. v. C&N Logistics, Inc.*, No. 3:18-cv-00438, 2020 U.S. Dist. LEXIS 45068, at *6–7 (M.D. Tenn. Mar. 16, 2020). And although courts ordinarily may not look beyond the four corners of the pleadings when resolving a motion to dismiss, courts may consider court documents from a prior litigation when the dismissal is based on res judicata without converting the motion into one for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010); *Polymer Indus. Prods. Co. v. Bridgestone/Firestone*, 211 F.R.D. 312, 315 (N.D. Ohio 2002).

When reviewing a motion under Rule 12(b)(6), courts must "construe the complaint in the light most favorable to [the] plaintiff[], accept all well-pleaded factual allegations as true, and

9

draw all reasonable inferences in [the] plaintiff['s] favor." *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### C. Ohio Res Judicata

The District argues that claim preclusion bars plaintiffs' takings claims against the District because: (i) the trial court's dismissal of Riveredge's claim against the District was a final decision on the merits; (ii) the fourth amended complaint involves the same parties – because the newly joined plaintiffs lack any interest in the matter in controversy apart from their shared ownership in the condominium with Riveredge; (iii) the takings claims could have been raised in the second amended complaint as alternative claims for relief; and (iv) the takings claims arise out of the same transaction or occurrence: the design and/or approval of the design and the construction of the stormwater basins. ECF Doc. 20 at 7, 9–11; ECF Doc. 27 at 3–9.

Reading the District's brief to assert both claim and issue preclusion, plaintiffs' respond that: (i) there was no decision on the merits as to takings claims specifically; (ii) the newly joined plaintiffs have "separate identities, interests, and mutually exclusive rights," in part because they were not harmed by the District's conduct until sometime after the trial court's decision; (iii) the second amended complaint could not have asserted a takings claim because the facts giving rise to such a claim (structural damage to the condominium) did not accrue until after the trial court's

decision; and (iv) Riveredge had to first exhaust alternative state court remedies before bringing a takings claim.  ECF Doc. 25 at 4–9.

### 1. Clarification of the Applicable Doctrine

As a threshold matter, the court finds it necessary to clarify the legal doctrine upon which the District seeks, and plaintiffs oppose, dismissal of plaintiffs' claims.  The preclusive effect of a state court judgment is determined by reference to the law of rendering state (Ohio).  28 U.S.C. § 1738; *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).  Ohio's preclusion doctrines are referred to as "res judicata," which includes both estoppel by judgment (claim preclusion) and collateral estoppel (issue preclusion).  *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (Ohio 1995).  Although related, the two are analytically distinct; claim preclusion refers to the effect of a judgment on future litigation of matters that were *never litigated*, whereas issue preclusion refers to effect of a final judgment on future litigation on a point of fact or law that *was litigated* and essential to the judgment.  See *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 61 (Ohio 2007).

The District's motion primarily argues claim preclusion, with issue preclusion arguments also embedded within its law of the case argument, that the Ohio Court of Appeals decided issues of fact that would preclude re-litigation in this court.  See ECF Doc. 20 at 7–11; *see also* ECF Doc. 27 at 11–12 (issue preclusion argument raised in the body of the reply brief).  Because claim preclusion principles are dispositive, the court need not address the alleged impact of either issue preclusion or law of the case.

### 2. Claim Prelusion

Under Ohio law, "a final judgment or decree, rendered on the merits by a court of competent jurisdiction, is a complete bar to any subsequent action on the same claim between the

11

same parties or *those in privity with them*." *Bus. Dev. Corp. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1129 (6th Cir. 2022) (internal quotation marks omitted; emphasis added). This can be reduced into four elements: (i) a final judgment was rendered by a court with jurisdiction; (ii) both actions must involve the same "transaction;" (iii) the second action must assert legal theories that were or could have been raised in the first action; and (iv) the second action must involve the same parties or those in "privity" with a party. *Id.* Because claim preclusion is an affirmative defense, the District bears the burden of proving its application. *Keymarket of Ohio, LLC v. Keller*, 483 F. App'x 967, 971 (6th Cir. 2012); *Miller v. Lagos*, 2008-Ohio-5863, ¶16 (Ohio Ct. App. 2008).

        a.     **Final Judgment on the Merits**

Both sides treat the Ohio Court of Appeals' decision which affirmed the trial court's dismissal of Riveredge's negligence claim against the District as the relevant decision for preclusion purposes. ECF Doc. 20 at 9; ECF Doc. 25 at 6; ECF Doc. 27 at 3–4. However, neither side has cited any law supporting that assumption and independent research did not reveal any caselaw applying Ohio claim preclusion in analogous circumstances.[5] The court will instead apply claim preclusion to trial court's judgment. This approach is consistent with the claim preclusive effect of a trial court judgment, which remains unaltered unless and until overturned on appeal, and its issue preclusive effect, which can be replaced by the judgment of the Ohio Court of Appeals affirming on alternative grounds. *Pogue v. Principal Life Ins. Co.*, 979 F.3d 534, 536 (6th Cir. 2020) ("whenever an appellate court affirms on an alternative

---

[5] Independent research indicates that claim preclusion can apply to a decision by the Ohio Court of Appeals reversing a conviction or the grant of an Ohio Civ. R. 60(B) motion. *See See Martin v. Bank of N.Y., Mellon Corp.*, 2020 U.S. Dist. LEXIS 55843, at *15 (S.D. Ohio Mar. 31, 2020) (applying Ohio claim preclusion to the reversal of the trial court's grant of a Rule 60(B) motion); *Bear v. Delaware Cnty., OH*, No. 2:14-cv-43, 2014 U.S. Dist. LEXIS 166997, at *8 (S.D. Ohio Dec. 2, 2014) (applying Ohio claim preclusion to the reversal of a conviction where neither party disputed the first element).

ground, issue preclusion no longer attaches to the ground on which the trial court decided the case, and instead attaches to the alternative ground on which the appellate court affirmed the judgment" (internal quotation marks omitted)); *Cully v. Lutheran Med. Ctr.*, 523 N.E.2d 531, 532 (Ohio Ct. App. 1987) ("It is well-settled that the pendency of an appeal does not prevent the judgment's effect as *res judicata* in a subsequent action.").

The court finds that that the first element of claim preclusion is met. A dismissal for failure to state a claim under Ohio Civ. R. 12(B)(6) is "an adjudication on the merits." *Hall v. GMS Mgmt. Co.*, No. 21-4210, 2022 U.S. App. LEXIS 22402, at *7 (6th Cir. Aug. 11, 2022) (unreported). The trial court's decision was also a "final judgment" under Ohio law because it determined the action with respect to Riveredge's claim against the District. Ohio Rev. Code § 2505.02(B)(1); *see also Hamilton Cnty. Bd. of Mental Retardation & Developmental Disabilities v. Prof'ls Guild of Ohio*, 46 Ohio St.3d 147, 153 (Ohio 1989) (to be final the judgment must "dispose of the whole merits of the cause or some separate or distinct branch thereof and leave nothing for the determination of the court"). Although the judgment only concerned Riveredge's claims against one of the three defendants, the court certified the judgment as final as to the District and determined that there was no just reason for delay. ECF Doc. 1-4 at 115–16; *see also* Ohio Civ. R. 54(B) ("In the absence of a determination that there is no just reason for delay, any order … which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties."). There is no dispute that the Cuyahoga County Court of Common Pleas was a court of competent jurisdiction. And it matters not to the first element whether the trial court ever ruled on a takings claim. *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 276 (6th

13

Cir. 2016) (applying Ohio law).  Thus, the first element for application of claim preclusion is satisfied.

### b.        Same Transaction or Occurrence

The second element of claim preclusion is also met.  Riveredge's negligence claim against the District in the second amended complaint arose out of Cleveland's construction of stormwater basins along the property line of its parking lot which adjoined the condominium building, the plans of which were reviewed and approved by the District.  *See* ECF Doc. 1-4 at 4, 6–12.  Plaintiffs' Ohio and federal takings claims against the District in the fourth amended complaint likewise arise out of the construction of the stormwater basins.  *See* ECF Doc. 14.  The two complains differ in that the fourth amended complaint alleged that continual flooding after the second amended complaint was dismissed caused structural damage to the condominium, which affected the interests of all plaintiffs instead of only Riveredge's.  But those additional factual allegations do not take away from the fact that the claims asserted in the amended complaint arise from and challenge the same underlying conduct: the design and/or approval of the design and the construction of the stormwater basins.  *See Grava*, 73 Ohio St.3d at 382.  Thus, the second element for application of claim preclusion is satisfied.

### c.        Previously Available Claim

The third element is met with respect to plaintiffs' state law takings claim.  The relevant question is whether Riveredge could have presented viable takings claim against the District in the second amended complaint.  Under Ohio law, takings claims must be brought through a mandamus action to compel public authorities to initiate appropriation proceedings, which can be initiated in the court of common pleas.  Ohio Rev. Code § 2731.02; *State ex rel. Shemo v. City of Mayfield Heights*, 95 Ohio St.3d 59, 63 (Ohio 2002).  And such mandamus relief can be

14

pleaded as an alternative remedy on a substantive state law claim. *See State ex rel. Marcum v. Florence Twp.*, 2017-Ohio-6916, ¶14 (Ohio Ct. App. 2017); *State ex rel Hensley v. City of Columbus*, 2011-Ohio-3311, ¶23–24, 37–38 (Ohio Ct. App. 2011); *State ex rel. McNamara v. City of Rittman*, 2009-Ohio-911, ¶17 (Ohio Ct. App. 2009). Thus, contrary plaintiffs' argument, Riveredge was not required to obtain a ruling on its negligence claim before it could pursue a state takings claim.

Plaintiffs counter that the takings claim did not accrue until the structural damage from the flooding became apparent, which did not occur until after the second amended complaint was dismissed. ECF Doc. 25 at 7–8. However, this argument is belied by Riveredge's third amended complaint – which raised the takings claim for the first time – but did not allege any structural harm to the condominium. ECF Doc. 1-5 at 2–17. Moreover, Riveredge was not required to experience structural damage to the condominium basement before it could bring an Ohio takings claim. The recurrent flooding, which deprived Riveredge of the ability to rent the basement units, would have sufficed. *See State ex rel. Stamper v. City of Richmond Heights*, 2010-Ohio-3884, ¶30 (Ohio Ct. App. 2010) (finding that a complaint adequately alleged that a taking occurred based on allegations that the defendant approved a drainage for a private water sewer system that resulted in the plaintiff's property becoming a de facto public stormwater basin). That the interference with Riveredge's use and enjoyment of the condominium unit was not constant, but only interrupted during periods of rain, would not have precluded it from asserting an Ohio takings claim. Property subject to intermittent flooding is inherently less able to be rented. *See State ex rel. Gilbert v. City of Cincinnati*, 125 Ohio St.3d 385, 392 (Ohio 2010).

15

Riveredge could also have raised a federal takings claim in conjunction with its sate takings claim.  *See, e.g.*, *Mitchell v. City of Mansfield*, 2021-Ohio-2421, ¶7 (Ohio Ct. App. 2021); *State ex rel. Rohrs v. Germann*, 2013-Ohio-2497, ¶17 (Ohio Ct. App. 2013); *see also Lumbard v. City of Ann Arbor*, 913 F.3d 585, 590 (6th Cir. 2019).  The intermittent nature of the flooding would not, on its own, have precluded a federal takings claim.  *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 38 (2012).  It is enough that the flooding be inevitably recurring.  *See Mays v. TVA*, 699 F. Supp.2d 991, 1027 (E.D. Tenn. 2010).  Thus, the third element for application of claim preclusion is satisfied.

### d. Privity

Privity under Ohio law is a "somewhat amorphous" concept, the scope of which depends on the situation.  *Brown v. City of Dayton*, 89 Ohio St.3d 245, 248 (Ohio 2000).  Generally speaking, it means only that the "the relationship between the one party on the record and another is close enough to include that other within the res judicata."  *Id.* (internal quotation marks omitted).  This includes "'such an identification of interest of one person with another as to represent the same legal right.'"  *Sullinger v. Sullinger*, 849 F. App'x 513, 518 (6th Cir. 2021) (quoting *Elec. Enlightenment, Inc. v. Kirsch*, 2008-Ohio-3633, ¶8 (Ohio Ct. App. 2008)).  And privity can exist when there is "a mutuality of interest, including an identity of desired result," which has been found when the relief sought is not "tailored to fit the[] unique circumstances or factual situation" of each plaintiff.  *Brown*, 89 Ohio St.3d at 248.

The fourth element is easily met with respect to Riveredge, as it was the sole plaintiff in the second amended complaint.  Riveredge represented itself in the second amended complaint to be "the owner" of the condominium in which the remaining plaintiffs have now asserted an interest.  ECF Doc. 1-4 at 3–4 (describing Riveredge as the owner of the "real property located at

16

3865 Rocky River Drive," which was "improved with a two-story medical office building plus a basement suite"). And Riveredge's second amended complaint sought damages and injunctive relief caused by the diversion of stormwater into and onto the condominium. ECF Doc. 1-4 at 8–13. Thus, Riveredge represented the interests of the condominium as a whole when it litigated the second amended complaint.

Similarly, the fourth amended complaint seeks compensatory damages and injunctive relief caused or made necessary by the same activity: diversion of stormwater into and onto the condominium. ECF Doc. 14 at 14–17, 25–26. Although there are more plaintiffs, there are no new facts specific to how the flooding individually harmed each plaintiff, and the relief sought by the various plaintiffs is undifferentiated. The one difference is that the plaintiffs in the fourth amended complaint have differing degrees of ownership and control in the condominium: (i) Riveredge now owns only three condominium units; (ii) the Darshana A. Shah Trust and Kamm Property Inc. each own one condominium unit; (iii) Dr. Benedict Kim owns four condominium units; (iv) Riveredge Dentistry Inc. is a tenant of Riveredge; and (v) the West Valley Condominium Association is the entity which owns, manages, and controls the land and the condominium, of which the other plaintiffs are members. ECF Doc. 14 at 4–5. However, Riveredge has already purported to act in the interests of the whole condominium in its second amended complaint. Thus, the court finds that plaintiffs were in privity with Riveredge when proceedings were conducted on the second amended complaint. Thus, the fourth element for application of claim preclusion is met.

In summary, the trial court's dismissal of Riveredge's second amended complaint was a final judgment on the merits by a court of competent jurisdiction. Plaintiffs' takings claims in the fourth amended complaint arise from the same transaction or occurrence as Riveredge's

17

dismissed negligence claim litigated on the second amended complaint. The takings claims asserted in the fourth amended complaint could have been pleaded in the alternative to Riveredge's negligence claim against the District in the second amended complaint. And the plaintiffs in the fourth amended complaint share a sufficient mutuality of interest with those of Riveredge in the second amended complaint that there exists privity among them. As such, Ohio's claim preclusion doctrine bars plaintiffs' claims in the fourth amended complaint as against the District. *See Bus. Dev. Corp.*, 37 F.4th at 1129.

### IV. Conclusion

Because the District has met it burden to demonstrate that all four elements for the application of claim preclusion under Ohio law, plaintiffs' federal and state takings claims against the District are barred. The District's motion to dismiss (ECF Doc. 19) is GRANTED and plaintiffs' fourth amended complaint is DISMISSED IN PART with respect to its claims against the District.

**IT IS SO ORDERED.**

Dated: December 21, 2022

Thomas M. Parker
United States Magistrate Judge